Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, May 09, 2011 2:01:07 PM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ANDREA SUE BROZSTEK, | ) | Case No. 10-1666 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| | ) | |
| CHASE BANK USA, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 10-145 |
| | ) | |
| ANDREA SUE BROZSTEK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Andrea Brozstek (the "Debtor") seeks entry of summary judgment on the adversary complaint filed against her by Chase Bank USA, N.A., which seeks to except $6,763 in credit card debt from her Chapter 7 discharge pursuant to 11 U.S.C. § 523(a)(2)(A) or (C).

For the reasons stated herein, the court will grant in part and deny in part the Debtor's motion for summary judgment.

### I. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

1

matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

## II. BACKGROUND

The Debtor had two credit card accounts with Chase Bank. As of April 30, 2010, one account had a balance of $0.79, and the other had a $0.00 balance. For her account ending in No. 0232, from May 11, 2010 to June 10, 2010, the Debtor incurred $3,766.83 in consumer charges, while making $286 in payments. Notably, the Debtor made a $1,128 purchase on May 16, 2010, from a furniture store in Portland, Oregon,[1] and made a $1,158.44 purchase on May 23, 2010, from a furniture store in Morgantown, West Virginia.

For her account ending in No. 5230, from May 5, 2010 to May 27, 2010, the Debtor incurred $3,465.47 in consumer charges, while making $214 in payments. Notably, the Debtor made a $2,100 purchase on May 23, 2010, from a furniture store in Morgantown. Also, between the two credit card accounts, the Debtor incurred $1,477 in "Cash / Bal Tran / Check" charges. The

---

[1] The Debtor apparently flew from Pittsburgh, Pennsylvania to Portland, Oregon.

remainder of the charges on both accounts reflect numerous small purchases. The total balance on both accounts was $6,763 at the time of her August 2, 2010 Chapter 7 bankruptcy petition.

### III. DISCUSSION

The Debtor contends that she is entitled to summary judgment on Chase Bank's complaint to except her credit card debt from discharge on two grounds. First, she contends that Chase Bank is not entitled to a presumption of nondischargeability as provided for in 11 U.S.C. § 523(a)(2)(C)(i)(I), and (II), on the grounds that she did not obtain any cash advances in the 70-day period preceding her bankruptcy petition, and did not purchase any luxury goods in excess of $600 in the 90-day period preceding her bankruptcy petition. Second, the Debtor contends that Chase Bank cannot prove the false pretenses, false representation, or actual fraud necessary to except a debt from discharge under § 523(a)(2)(A).

**A.     Presumption of Nondischargeabiltiy – § 523(a)(2)(C)**

The Debtor states that Chase Bank is not entitled to a presumption that her credit card expenditures in the 70 day period preceding her bankruptcy petition (for cash advances), or the 90 day period preceding her bankruptcy petition (for luxury goods), are nondischargeable. These presumptively nondischargeable periods are provided in 11 U.S.C. § 523(a)(2)(C):

> (a) A discharge under section 727 . . .of this title does not discharge an individual debtor from any debt–
>
> . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by--
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>>
>> . . .
>
> or
>> (C)   (i) for purposes of subparagraph (A)--
>>> (I) consumer debts owed to a single creditor and aggregating more than $600 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable; and
>>> (II) cash advances aggregating more than $875 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 70 days before the order for relief under this title, are presumed to be nondischargeable;

3

§ 523(a)(2)(A), (C).

As indicated by the Senate Report accompanying the 1984 amendments to § 523(a)(2)(C), the purpose of the presumptive period is to "address a type of unconscionable or fraudulent debtor conduct not heretofore considered by the code – that of loading up." S. Rep. No. 65, 98th Cong., 1st Sess. 58 (1985) (Senate Report accompanying S 445, Omnibus Bankruptcy Improvements Act of 1983, which was a forerunner to the Bankr. Amend Act of 1984); *see also Citibank (S.D.), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1092) (9th Cir. 1996) ("'Excessive debts incurred within a short period prior to the filing of the petition present a special problem: that of 'loading up' in contemplation of bankruptcy.'") (citation omitted).

Here, the Debtor filed bankruptcy on August 2, 2010. For purpose of determining the 70-day presumptive period for cash advances, only cash advances incurred on or after May 24, 2010, fall within the presumptive period. In her account ending in No. 0232, the Debtor only incurred a cash advance interest charge of $22.82 within this presumptive period. In her account ending in No. 5230, the debtor only incurred three cash advance interest charges during the presumptive period totaling $10.68. Consequently, no presumption exists in this case that the Debtor's cash advances are excepted from her discharge under § 523(a)(2)(C)(i)(II) because the only cash advance charges during this period are for interest on previously obtained cash advances.

Regarding the 90-day presumptive period for luxury goods or services, only the transactions that occurred on or after May 4, 2010, fall within the presumptive period. Here, all the charges incurred by the Debtor at issue in this adversary proceeding fall within this 90-day period. Thus, the only issues are whether any of the purchases made by the Debtor are for "luxury goods or services" and, if so, whether the purchase of the goods and services from a single creditor exceeds the statutory $600 threshold.

Concerning the latter issue, purchases on a credit card are typically three-party transactions. The card holder presents the card to a retailer, who agrees to accept payment from the credit card issuer rather than the purchaser. *Eashai*, 87 F.3d at 1087. Consequently, when a debtor makes multiple purchases on a credit card from many different retailers, all of the obligations are owed to a single creditor – the credit card issuer – and the individual merchants are generally not creditors of the debtor. *E.g.*, *State Farm Bank, FSB v. Venegas (In re Venegas)*, No. 08-54541, 2010 Bankr. LEXIS 1797 at *14-15 (Bankr. N.D. Cal. May 27, 2010) (holding that the presumption for luxury

4

goods and services was met when the debtor made numerous purchases from various merchants on a credit card, including $5.90 at Sherri's Cookies and $5.98 at Top Nails).

In defining "luxury goods," the Bankruptcy Code provides that "goods or services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor" are not included within the meaning of that term. 11 U.S.C. § 523(a)(2)(C)(ii)(II). The "circumstances surrounding the purchase are relevant to the determination whether the good is a luxury good." *FIA Card Servs., N.A. v. George (In re George)*, 381 B.R. 911, 916 (Bankr. M.D. Fla. 2007). For example, some "[r]elevant considerations are whether the good served a significant family function and if the transaction evidences any fiscal responsibility." *Id.* Also a court should consider why "the Debtor purchased the item and the actual use by the Debtor of the item under consideration." *General Motors Acceptance Corporation v. McDonald*, 129 B.R. 279, 283 (Bankr. M.D. Fla. 1991).

Excluding cash advances and associated interest charges, the Debtor made purchases totaling $5,562.35 in the 90-day period before she filed her bankruptcy petition. These charges included three furniture purchases totaling $4,386.44. In her memorandum in support of summary judgment, the Debtor asserts that she made all her credit card purchase while she was recently widowed and between jobs.[2] However, no exhibits other than the Debtor's credit card transaction history accompany her motion for summary judgment.

Thus, the court cannot ascertain whether any of the purchases made by the Debtor were for luxury goods or services because the court cannot ascertain the circumstances surrounding the Debtor's purchases to analyze whether they were reasonably necessary for her support and maintenance. In short, the Debtor has not demonstrated on summary judgment that none of her purchases were for luxury goods or services such that Chase Bank cannot prevail as a matter of law on its entitlement to a presumption of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(C)(i)(I).

Therefore, the court will grant the Debtor's motion for summary judgment as it relates to the

---

[2] The Debtor did not submit any affidavit in support of her motion for summary judgment and this assertion of fact is only a statement of counsel. In response to the Debtor's motion, Chase Bank requested that the court review the Debtor's bankruptcy petition, schedules, and statement of financial affairs. It appears from a review of these documents that the Debtor sold a home in Wellsburg, West Virginia and moved to Morgantown, West Virginia sometime during 2010.

establishment of the fact that the Debtor did not obtain any cash advances within the 70-day presumptive period, but will deny the motion as it relates to the Debtor's failed attempt to demonstrate that she did not purchase any luxury goods within the 90-day presumptive period.

**B.     False Pretenses, False Representation, Actual Fraud  – 523(a)(2)(A)**

The Debtor asserts that she obtained her credit card accounts with Chase Bank several years before filing bankruptcy, and all she did was access her line of credit in May 2010. Moreover, the Debtor states that her intent to repay Chase Bank is demonstrated by her $500 in payments that reduced her May 2010 charges.

Based on these assertions, the Debtor contends that Chase Bank cannot show any genuine issue of material fact that might allow it to prevail on its cause of action to except the Debtor's credit card debt from her discharge under 11 U.S.C. § 523(a)(2)(A), which provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--
>
> . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by--
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

§ 523(a)(2)(A).

Not all debts incurred as a result of fraud fall within this exception to discharge; rather, this exception only includes those "debts in which the debtor used fraudulent means to obtain money. . . ." *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007). The intent of § 523(a)(2) is "to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means." *Id.* at 219-20.

The terms "false pretenses," "false representation," and "actual fraud" are to be interpreted according to the common understanding of those terms at the time § 523(a)(2)(A) was enacted. *E.g.*, *Field v. Mans*, 516 U.S. 59, 69 (1995) ("The operative terms in § 523(a)(2)(A) . . . carry the acquired meaning of terms of art. They are common-law terms, and . . . they imply elements that the common law has defined them to include."). What Congress meant when it used the terms can be derived from the generally shared common law, as set forth in *Restatement (Second) of Torts* (1976), which was published shortly before Congress passed the 1978 Bankruptcy Code. *Field*, 516 U.S. at 70-73;

6

*see also Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 134 (4th Cir. 1999) ("[W]e will follow the Supreme Court's lead and look to the Restatement to determine the elements required to prove that claim."). To define "actual fraud" the Supreme Court looked to the definition of "fraudulent misrepresentation" under the Restatement, which defines the tort as:

> One who fraudulently makes a misrepresentation of fact, opinion, intention, or law for the purpose of inducing another to act or to refrain from action in reliance upon it, subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

*Restatement (Second) of Torts* § 525 (1976).

In *Colombo Bank v. Sharp (In re Sharp)*, No. 08-1646, 340 Fed. Appx. 899, 2009 U.S. App. LEXIS 18200 at *4 (4th Cir. Aug. 14, 2009), the court stated that "a creditor's proof of actual fraud under subsection (2)(A) requires satisfaction of the elements of common law fraud: '"(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages.'" (quoting *Rountree*, 478 F.3d at 218). Regarding a debtor's misstatement of intention, it is only "fraudulent if he does not have that intention at the time he makes the representation." *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997) (quoting Restatement (Second) of Torts § 530(1) (1976)).

Concerning purchases from retail merchants by use of a credit card, the merchant accepts the credit card with the understanding that the credit card issuer – not the debtor – will be making payment; thus, the debtor does not make any representation to the merchant. In ascertaining what representations a debtor makes to the credit card issuer by making a purchase from a merchant, bankruptcy courts within the Fourth Court adopt a "totality of the circumstances" test from which a court may infer whether a debtor has an intent to not repay the debt to the credit card issuer:

> [Under T]he "totality of the circumstances" theory . . . a court may infer the existence of the debtor's intent not to pay if the facts and circumstances of a particular case present a picture of deceptive conduct by the debtor. . . . [T]he debt still may be deemed non-dischargeable provided that the objecting creditor proves that the debt was incurred through "actual fraud." In determining whether "actual fraud" exists, courts have employed a test involving twelve factors. They are as follows:
>
> (1) The length of time between the charges made and the filing of the bankruptcy;
> (2) Whether or not an attorney has been consulted concerning the filing of the bankruptcy before the charges were made;

7

> (3) The number of charges made;
> (4) The amount of the charges;
> (5) The financial condition of the debtor at the time the charges were made;
> (6) Whether the charges were above the credit limit of the account;
> (7) Whether the debtor made multiple charges on the same day;
> (8) Whether or not the debtor was employed;
> (9) The debtor's prospects for employment;
> (10) Financial sophistication of the debtor;
> (11) Whether there was a sudden change in the debtor's buying habits; and
> (12) Whether the purchases were made for luxuries or necessities.
>
> The plaintiff need not prove the existence of all of the factors in order for a court to find the requisite intent to deceive. The above list of factors is not exhaustive. Some courts consider whether the debtor made any payments on the account after incurring the subject charges, and whether the debtor made charges exceeding the credit limit of the account. Other courts consider how the relationship between the debtor and the creditor was created and how it was maintained.

*Hecht's v. Valdes (In re Valdes)*, 188 B.R. 533, 537-38 (Bankr. D. Md. 1995) (citations omitted); *see also Universal Bank, N.A. v. Howard (In re Howard)*, 276 B.R. 113 (Bankr. S.D. W. Va. 2002) (adopting the totality of the circumstances test); 4 *Collier on Bankruptcy* ¶ 523.08[2][f][5] (15th ed. 2011) (stating that the implied representation of a debtor's intent to repay is the better of the implied representation approaches).

In this case, by demonstrating in its complaint that the Debtor incurred substantial credit card charges (in number and in amount) shortly before filing bankruptcy, Chase Bank has demonstrated a plausible right of relief under § 523(a)(2)(A). On summary judgment, the Debtor has not presented the court with any additional exhibits or affidavits that would show Chase Bank is not entitled to the relief it seeks. Accordingly, the court will deny the Debtor's motion for summary judgment to the extent that it seeks to dismiss Chase Bank's cause of action under 11 U.S.C. § 523(a)(2)(A).

## IV. CONCLUSION

For the above stated reasons, the court will enter a separate order that grants the Debtor's motion for summary judgment as it relates to the establishment of the fact that the Debtor did not obtain any cash advances within the 70-day presumptive period. The court will deny the motion as it relates to the Debtor's failed attempt to demonstrate that she did not purchase any luxury goods

within the 90-day presumptive period, and the Debtor's failed attempt to show Chase Bank is prevented from obtaining relief under 11 U.S.C. § 523(a)(2)(A).